UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY LANGENDORF, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKINNYGIRL COCKTAILS, LLC, BETHENNY FRANKEL, SGC GLOBAL, LLC, and BEAM GLOBAL SPIRITS & WINE, INC.,<br><br>Defendants. | No. 11 CV 7060<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Amy Langendorf alleges that Skinnygirl Margarita, a pre-mixed alcoholic beverage, contains the non-natural preservative sodium benzoate, and thus the text "all natural" on the label is false and misleading. Langendorf sued the makers and promoters of the product (1) under the Illinois Consumer Fraud and Deceptive Business Practices Act; (2) under Illinois statutes concerning express and implied warranties; and (3) under breach-of-contract, unjust enrichment, and promissory estoppel theories. Langendorf seeks to represent an Illinois-wide class of purchasers of the product, and now moves for class certification. For the reasons discussed below, that motion is denied.

I. **Legal Standards**

A plaintiff seeking to certify a class under Rule 23 of the Federal Rules of Civil Procedure must show that her proposed class is "sufficiently definite that its

members are ascertainable." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012). Once that hurdle is cleared, the plaintiff must satisfy the four requirements of Rule 23(a)—commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). The plaintiff must also satisfy the requirements of at least one subsection of Rule 23(b). *Id.* Langendorf seeks to certify a class under Rule 23(b)(3), so must show that issues common to the class members predominate over questions affecting only individual members, and that a class action is superior to other available adjudication methods. Fed. R. Civ. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

Langendorf must "affirmatively demonstrate" compliance with Rule 23 through "evidentiary proof"—mere allegations are insufficient. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Compliance with each requirement must be shown by a preponderance of the evidence. *Messner*, 669 F.3d at 811. I can only certify a class if I am "satisfied, after a rigorous analysis," that compliance with Rule 23 has been shown, even if the analysis entails some overlap with the merits. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011); *see also Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

**II.   Analysis**

Langendorf seeks to represent the following class:

Any and all persons who purchased "Skinnygirl" Margarita spirits in Illinois from March 1, 2009 until the date notice is disseminated. Excluded from the Class are Defendants' officers, directors, agents

2

and employees, those who purchased "Skinnygirl" Margaritas for the purpose of resale and any judge presiding over this case, including any member of his/her family.

[104] at 2. Defendants oppose certification, arguing that the proposed class is not ascertainable, and that Langendorf has satisfied none of the Rule 23 requirements.

**A. Whether the Class is Ascertainable**

Langendorf must show that the proposed class is sufficiently definite—its members must be ascertainable. *Jamie S.*, 668 F.3d at 493; *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A proposed class is not ascertainable where "there is no way to know or readily ascertain who is a member of the class." *Jamie S.*, 668 F.3d at 495. The identities of the class members need not be known at this stage, but there must be some objective criteria by which the identities can be determined. Manual for Complex Litigation, Fourth § 21.222. In addition to defining the class by reference to objective criteria, the plaintiff must propose a method for ascertaining class members with some evidentiary support that the method will be successful. *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013).

Plaintiff has satisfied the objective-criteria requirement. Purchase of Skinnygirl Margarita, after March 1, 2009, and lack of association with defendants or the court provide objective descriptions of prospective class members. But plaintiff has not offered any method by which the court could find out who the purchasers were. Plaintiff says class membership can be verified by the dates of purchase, the locations of retail establishments, the frequency of purchases, the quantity of purchases, and the cost of purchase, [129] at 22, but does not offer any showing that this can be done. For example, plaintiff provides no evidence that any

records exist that show who purchased the offending product, when, or where. Defendants argue that because they never sold the product directly to consumers, there is no way (without individual mini-trials) to specifically identify the class members. [111] at 12–13. The burden is on the plaintiff to demonstrate that the class can be identified, and plaintiff has failed to meet this burden.

The Third Circuit's decision in *Carrera* could be read to impose too high a burden on plaintiffs in consumer class actions. *See Carrera v. Bayer Corp.*, 2014 WL 3887938 (3d Cir. 2014) (Ambro, J., dissenting from denial of rehearing en banc). I am not bound by *Carrera*, but I am persuaded that in order for a class to be ascertainable, there must be a showing by plaintiff that some method exists to identify the members. Here there has been none; even if *Carrera* set the bar too high, plaintiff has not made a minimal showing.[1] Because plaintiff has failed to demonstrate how one would go about using the objective criteria to ascertain the class members, on this record the class cannot be ascertained. For the sake of completeness, I address the other requirements for class certification.

**B. Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. *Szabo*, 249 F.3d at 676. Defendants argue that

---

[1] Defendants also argue that the proposed class is "incurably overbroad" because it includes individuals that did not rely on the "all natural" text and thus were not harmed. [111] at 14. This is not an issue for ascertaining the class, but one of individual claim validity. It would be wrong to think that no class could be certified until proof exists that every member has been harmed. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757–58 (7th Cir. 2014). Therefore, the fact that the class definition might include individuals with no claim is not a reason to find the class improperly defined.

numerosity is not met because the proposed class includes people whose claims will fail on the merits. [109] at 7–8. As in *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084–85 (7th Cir. 2014), the defendants are putting the cart before the horse. "How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified." *Id.* Langendorf contends that the proposed class includes thousands of members. [104] at 6. That estimate, which is reasonable in a case concerning a consumer product, is not disputed by defendants. The numerosity requirement is met.

### C. Commonality

Rule 23(a)(2) requires the existence of at least one question of law or fact that is common to the class. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 131 S.Ct. at 2551 (internal quotation and citation omitted). This requires more than a mere showing that the proposed class members have "all suffered a violation of the same provision of law." *Id.* Rather, the claims must depend upon a common contention, capable of classwide resolution. *Id.* "What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal marks omitted) (quoting *Wal-Mart*, 131 S.Ct. at 2551). "An issue central to the validity of each one of the claims in a class action, if it can be resolved in one stroke, can justify class treatment." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (internal quotation marks omitted) (quoting *Wal-Mart*, 131 S.Ct. at 2551).

5

Defendants argue that the commonality requirement is not met because "[t]he critical questions of injury, causation, materiality, and reliance" turn on individual issues. [109] at 9. But counting and weighing individual issues is an analysis for the predominance requirement of Rule 23(b)(3). To satisfy the commonality requirement, a single common question will do. *Wal-Mart*, 131 S.Ct. at 2556; *Suchanek*, 764 F.3d at 756 ("Neither Rule 23 nor any gloss that decided cases have added to it requires that every question be common. It is routine in class actions to have a final phase in which individualized proof must be submitted."). Whether the product's label was false or misleading is relevant to the asserted claims, and is capable of classwide resolution. *See Suchanek*, 764 F.3d at 758 (question of "whether packaging was likely to mislead a reasonable consumer" satisfies the commonality requirement). The commonality requirement is satisfied.

**D. Typicality**

To satisfy Rule 23(a)(3)'s typicality requirement, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The typicality requirement addresses the separate concerns that (1) the representative's claim may *fail* on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may *prevail* on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

Defendants argue that "the proposed class would include individuals who knew of, and those who did not care about, the presence of one part per million of sodium benzoate, which precludes a finding of typicality." [109] at 10. Defendants urge that individual examinations would be required to determine whether putative class members were deceived by the "all natural" marketing. [109] at 11. But defendants have not raised the concern that unnamed class members with *meritorious* claims will be prejudiced by Langendorf's representation. Defendants' concerns—that time will be spent on individual examinations to eliminate *non-meritorious* claims—are more appropriately considered under the predominance requirement of Rule 23(b)(3).

Generally, "[a] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Oshana*, 472 F.3d at 513 (quotations omitted). Langendorf complains about defendants' labeling and marketing practices, which were directed to the public at large. [104] at 9. Her claim is typical of the claims of the proposed class.

### E. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) "A class is not fairly and adequately

represented if class members have antagonistic or conflicting claims." *Id*. (citations omitted). A proposed class representative "who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design*, 637 F.3d at 726 (internal citations and quotation marks omitted).

Defendants have raised issues that potentially undermine Langendorf's credibility. *See* [109] at 12–13 (discussing Langendorf's inconsistent testimony about her prior arrest; evasive testimony about underage drinking; incorrect testimony about defendant Frankel's statements on *The Real Housewives of New York*; and uncertain testimony about when she purchased Skinnygirl Margarita). But "[f]or an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design*, 637 F.3d at 728. I am not persuaded that defendants have raised issues that will undermine Langendorf's credibility to that degree, and defendants have not shown that this evidence will be admissible at trial. *See id*. (defendants cannot "derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative").

Defendants raise an additional concern: an apparent personal relationship between Langendorf and lead counsel for plaintiff in this case. Specifically, Langendorf's father recommended counsel to Langendorf. [106] at 14. The father, an

8

attorney, has a professional relationship with counsel: they have acted as co-counsel in at least five putative class action lawsuits (including some filed after this case). [106] at 14. Indeed, the father's name and contact information appeared in the signature block of written discovery responses in this case (and no one has explained why). [106] at 4 n.5. Further, counsel has brought other class action suits in which the named plaintiffs were members of Langendorf's family. [106] at 14. Defendants argue that the personal relationship between Langendorf and counsel presents a conflict of interest, making the representation inadequate.

In her reply brief, Langendorf (through counsel) brushes this concern off, stating that "Defendants' *ad hominem* attack on counsel for being co-counsel with Plaintiff's father in other cases, and successfully representing Plaintiff's grandfather, are baseless arguments without support in fact or law . . . ." [129] at 12. But Langendorf does not dispute the facts, and the law does support defendants' position. *See Eubank v. Pella Corp.*, 753 F.3d 718, 722, 723–24 (7th Cir. 2014); *see also Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 89–91 (7th Cir. 1977) (affirming two denials of class certification due to close relationships between class counsel and named plaintiffs); *Mowry v. JP Morgan Chase Bank, N.A.*, 2007 U.S. Dist. LEXIS 44222, *8–13 (N.D. Ill. 2007) (neither the brother, nor the former roommate, of class counsel could adequately serve as a class representative).

In *Eubank*, the Seventh Circuit reversed the approval of a class-action settlement on multiple grounds, including the conflict of interest between the named plaintiff and class counsel. "Class representatives are, as we noted earlier,

9

fiduciaries of the class members, and fiduciaries are not allowed to have conflicts of interest without the informed consent of their beneficiaries, which was not sought in this case. Only a tiny number of class members would have known about the family relationship between the lead class representative and the lead class counsel—a relationship that created a grave conflict of interest; for the larger the fee award to class counsel, the better off Saltzman's daughter and son-in-law would be financially—and (which sharpened the conflict of interest) by a lot." *Id.* at 723–24.

While Langendorf is not related to counsel, defendants have provided evidence indicating that the relationship is not purely arms-length, and this causes genuine concern about conflicts of interest. Yet plaintiff's reply brief largely ignores the issue, despite the fact that she bears the burden of proving by a preponderance of the evidence that the putative class members would be adequately represented. Plaintiff has failed to carry that burden; therefore, I find the adequacy of representation requirement has not been satisfied.

**F. Predominance and Superiority**

Although similar to commonality, "the predominance criterion is far more demanding." *Messner*, 669 F.3d at 814. To satisfy it, the plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). I must compare the role of common issues of law and fact with the role of individual issues, and consider whether it would be necessary to examine individual transactions to decide whether there is liability on individual claims. *See Messner*, 669 F.3d at 815; *see also Lady*

*Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 738 (7th Cir. 2011). Predominance requires that the "legal or factual questions that qualify each class member's case as a genuine controversy" are "sufficiently cohesive to warrant adjudication by representation." *Messner*, 669 F.3d at 814. "Predominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko*, 739 F.3d at 1085. Predominance is not satisfied if "resolving a common issue will not greatly simplify the litigation to judgment or settlement . . . ." *Id.* "If the class certification only serves to give rise to hundreds or thousands of individual proceedings . . . it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008).

The predominance inquiry "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011) (internal quotation marks omitted). The individual issue that defendants focus on is the particular reason why each class member purchased Skinnygirl Margarita.[2] An element of each claim in the complaint is that the plaintiff was harmed by the allegedly misleading "all natural" text. For example, to

---

[2] Defendants also argue that the specific price paid by each putative class member is an individual issue that should preclude class certification. [111] at 8, 11. I disagree. *See Butler*, 727 F.3d at 801 ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.").

11

prove liability on the Illinois Consumer Fraud and Deceptive Business Practices Act claim, class members must show proximate causation. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 179–80, 200 (2005); *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Langendorf's argument to the contrary ([129] at 15–16) is wrong; it relies on the text of 815 ILL. COMP. STAT. § 505/2, but ignores § 505/10a, which applies to private actions, as opposed to actions brought by the Attorney General. *Oshana*, 472 F.3d at 514–15 (citing *Oliveira*, 201 Ill.2d at 155). Langendorf's other causes of action similarly require a showing of harm.[3]

Contrary to the authority just cited, Langendorf states that "there are no individual issues among Class members relevant to the determination of the Defendants' liability." [104] at 12–13. Langendorf argues that it is irrelevant why each class member purchased the product, because "the simple fact is that Plaintiff and the Class did not get what they paid for, i.e. 'All Natural' or 'Blue Agave'." [129] at 5–6. But "what they paid for" is precisely the question, and it is an individual one. That common issues predominate over individual ones is a requirement for class certification, and Langendorf has the burden of demonstrating it by a preponderance of the evidence—attorney assertions do not suffice.

---

[3] *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 518–19 (7th Cir. 2011) (unjust enrichment); *Zwicky v. Freightliner Custom Chassis Corp.*, 373 Ill.App.3d 135, 144 (2d Dist. 2007) (breach of express warranty; breach of implied warranty); *Wigod*, 673 F.3d at 560 (breach of contract) (citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill.App.3d 6 (1st Dist. 2006)); *Wigod*, 673 F.3d at 566 (promissory estoppel) (quoting *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill.2d 46 (2009)).

Next, Langendorf argues that "the fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." [129] at 14. But even if that were a correct statement of the law (for these claims, in this Circuit), Langendorf has produced no *evidence* to show that causation will be defeated only as to "a few" class members; in other words, she has not demonstrated the materiality of the "all natural" text. As defendants point out ([111] at 9), such a showing could have been attempted through survey evidence. Langendorf submitted no evidence, survey or otherwise, to show what portion of purchasers likely relied on the "all natural" text, or the degree to which the label "all natural" had a tendency to influence the decision to purchase the product. She has therefore failed to carry her burden to show that common issues predominate. *See Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 818–19 (7th Cir. 2010) (where plaintiffs' proffered expert testimony was excluded, they were "left with too little to satisfy Rule 23(b)(3)'s predominance prong").

To be sure, individual issues will almost always be present in consumer fraud actions, and the Seventh Circuit recently stated that it is an error of law to apply a rigid rule that "individual issues necessarily predominate in cases requiring individual subjective inquiries into causality." *Suchanek*, 764 F.3d at 759; *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) ("While consumer fraud class actions present problems that courts must carefully consider before granting

13

certification, there is not and should not be a rule that they never can be certified."). I do not apply a rule that individual issues necessarily predominate in this case, but I do find that Langendorf, who has the burden of proof, has not shown otherwise. The court's decision in *Suchanek* is illustrative.

The *Suchanek* defendants marketed and sold single-cup coffee pods for use with the popular Keurig-brand coffee machines. But unlike Keurig-brand pods, the defendants' product contained almost exclusively instant coffee. 764 F.3d at 753. Recognizing that their target consumers disfavor instant coffee, the defendants intentionally concealed the nature of their product. *Id*. Further, they charged three-to-four times as much for their product as typical instant coffee, so "only a very price insensitive consumer, or one who was misled," would buy it. *Id*. at 754. Therefore, unlike Langendorf, the *Suchanek* plaintiff produced evidence tending to show the materiality of the misleading marketing. Because few (if any) informed purchasers would have bought the product, the court stated that "if the class prevails on the common issue, it would be a straightforward matter for each purchaser to present her evidence on reliance and causation. Indeed, if the class prevails, the case would probably be quickly settled." *Id*. at 760 (internal marks omitted).

The record before the *Suchanek* court was quite different than the record here: "From the record amassed for the class certification decision, it is apparent that this is not a case where few, if any, of the putative class members share the named representative's grievance against the defendant. If it were, things would be

14

different." *Id.* at 758. Langendorf has not amassed any such record: she offers no evidence concerning the portion of the proposed class that did not know about the presence of a small quantity of sodium benzoate and would not have purchased the product (or paid as much as they did) had they known. While the *Suchanek* plaintiff may have carried her burden of showing that common issues predominate, Langendorf has not.[4]

In short, I agree with the analysis conducted by Judge Feinerman, who denied class certification in a similar case:

> To prevail on an ICFA, intentional representation, or unjust enrichment claim[], each class member would have to prove that they were deceived by Chattem's labeling of Dexatrim and that they suffered damages as a result. . . .
>
> These matters cannot be proved on a classwide basis. The proposed class includes individuals who: (1) were unaware of the presence of hexavalent chromium in Dexatrim and who would not have purchased the product had they been so aware; (2) were unaware of the presence of hexavalent chromium but may have still purchased the product had they been so aware; and (3) were aware of the presence of hexavalent chromium and purchased the product anyway. These differences among the proposed class require that the key liability issues—whether a given class member was deceived by Chattem's labeling of Dexatrim and whether she

---

[4] Langendorf submitted, as supplemental authority, two cases in which the district court granted class certification. [138]. In each case, the plaintiff's theory was that the defendant's homeopathic product was completely bogus and worthless, such that no informed consumer would purchase it for any reason. Under such a theory, the courts found that individual issues of reliance did not preclude certification. *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, *29–30 (C.D. Cal. 2014) (under plaintiff's theory, all purchasers were harmed, even those that were satisfied, because satisfaction resulted from a placebo effect); *Allen v. Hyland's Inc.*, 2014 U.S. Dist. LEXIS 107187, *37–38 (C.D. Cal. 2014) (same). Langendorf's theory is not that the Skinnygirl product is worthless, and Langendorf has offered no evidence to suggest that harm could be presumed by the "all natural" label. Given the nature of the product (a pre-mixed alcoholic beverage), it would not be reasonable to infer that a false "all natural" label rendered the drink worthless to its consumers.

> suffered damages as a result—can be resolved only on an individual basis. Certification under Rule 23(b)(3) is not appropriate for resolving such highly individualized questions of fact.

*Lipton v. Chattem*, 2013 U.S. Dist. LEXIS 17216, *15–17 (N.D. Ill. 2013) (internal marks and citations omitted) (citing *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 746–48 (7th Cir. 2008); *Oshana*, 472 F.3d at 514; *In re Sears, Roebuck & Co.*, 2007 U.S. Dist. LEXIS 89349 (N.D. Ill. 2007) (denying class certification of ICFA and unjust enrichment claims where the class included "people who (1) bought Craftsman tools but never saw any Craftsman advertising; (2) bought Craftsman tools but never saw advertising representing that the tools were made in the United States; and (3) bought Craftsman tools with the knowledge that those tools were not made in the United States")).

I also agree with the analysis in *Weiner v. Snapple Bev. Corp.*, 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. 2010), in which the defendant was alleged to have violated New York's deceptive trade practices act by labeling its beverages "All Natural" despite the presence of high fructose corn syrup. The court denied certification:

> [P]laintiffs have not proposed a suitable methodology for establishing the critical elements of causation and injury on a class-wide basis. Without a reliable methodology, plaintiffs have not shown that they could prove at trial using common evidence that putative class members in fact paid a premium for Snapple beverages as a result of the "All Natural" labeling. And since the issue of damages is bound up with the issue of injury in this case, plaintiffs have likewise failed to show how damages could be proven class-wide. Because individualized inquiries as to causation, injury, and damages for each of the millions of putative class members would predominate over any issues of law or fact common to the class, plaintiffs' [deceptive trade practices] claim cannot be certified under Rule 23(b)(3).

16

*Id.* at *18; *see also id.* at *34–35 (denying certification on unjust enrichment claim); *id.* at *36–37 (denying certification on breach of express warranty claim).

Because Langendorf has not shown that common issues predominate, she has not shown that a class action is superior to other adjudication methods. *See Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007) ("[W]hen a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment.").

### III. Motion to Exclude Expert Report

In a separate motion, Langendorf asked me to exclude the expert report and testimony of defendants' expert, Dr. Michael Rappeport. [101]. I have decided Langendorf's motion for class certification without relying on Dr. Rappeport's report or testimony; therefore, a full *Daubert* analysis is not necessary at this time. *Messner*, 669 F.3d at 814. The motion to exclude Rappeport's report and testimony is denied as moot.

### IV. Materials Filed Under Seal

The parties filed certain materials in connection with the class certification motion under seal. The filing party must now file a publicly accessible version, redacting only information that fits the narrow categories of information deserving of under-seal status. *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 546–47 (7th Cir. 2002); *Union Oil Co. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000).

## V. Conclusion

For the reasons discussed above, Langendorf's motion for class certification [94] is denied. Langendorf's motion to exclude the report and testimony of Dr. Rappeport [101] is denied as moot.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 10/30/14